**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
*E-mail: bheikali@faruqilaw.com*
Joshua Nassir (SBN 318344)
*E-mail: jnassir@faruqilaw.com*
Ruhandy Glezakos (SBN 307473)
*E-mail*: glezakos@faruqilaw.com
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

*Attorneys for Plaintiff and the Putative Classes*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| CECILIA MARTINEZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MEAD JOHNSON & COMPANY, LLC,<br><br>Defendant. | CASE NO.: 5:22-cv-00213<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Cecilia Martinez ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Defendant Mead Johnson & Company, LLC (collectively, "Defendant"). Plaintiff makes the following allegations based on the investigation of her counsel and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on her personal knowledge.

## **INTRODUCTION**

1.     Plaintiff brings this consumer protection and deceptive advertising class action lawsuit against Defendant, based on Defendant's misleading business practices with respect to the marketing and sale of its powdered Enfamil Gentlease, Enfamil Enspire Gentlease, Enfamil NeuroPro Gentlease, and Enfamil NeuroPro Sensitive Infant Formula products (the "Products").[1]

2.     Throughout the statute of limitations period, Defendant has labeled and advertised the Products as "Milk-based Powder[s]," leading consumers to believe that the primary ingredient of the powdered Products are milk-based.

3.     However, the primary ingredient in the Products is not milk-based. Rather, the primary ingredient in the Products is corn syrup solids (i.e., dried corn syrup, a form of sugar). As such, Defendant's labeling and advertising of the Products is false and deceptive.

4.     Defendant's conduct targets parents who seek to provide their infants with a superior form of nutrition – a milk-based product – as opposed to one made of a less-nutritious ingredient. In fact, an infant consuming 28 oz. of Defendant's formula is consuming 56 grams of corn syrup solids every day, which is more than the amount of a corn syrup in 16 oz. of Coca-Cola.

5.     Plaintiff and other consumers purchased the Products because they reasonably believed – based on Defendant's representations – that the primary

[1] The Products are fully defined and depicted in Paragraph 15.

ingredient in the Products is milk-based. This is not unreasonable, given that many of Defendant's competitor products, and other products in Defendant's own product line, *are* milk-based when advertised as such.

6.     Had Plaintiff and other consumers known the truth (i.e., that the primary ingredient of the Products was not milk-based), they would have paid less for them, or would not have purchased them at all. As a result, Plaintiff and other consumers have been deceived and have suffered economic injury.

7.     Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled Products during the statute of limitations period.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Defendant is a citizen of a state different from at least some members of the proposed Class, including Plaintiff.

9.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California, through its sale of the Products in California and to California consumers.

10.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District and she purchased the Products in this District.

## THE PARTIES

11.     Plaintiff Cecilia Martinez is a citizen of the United States and the State of California and she currently resides in Riverside County, California. In

-2-

September 2021, Plaintiff Martinez purchased the Enfamil Gentlease 12.4 oz Infant Formula from a Stater Brothers in Desert Hot Springs, California. In or around September 2021, Ms. Martinez also purchased the Enfamil Gentlease NeuroPro Ready to Use Infant Formula Bottles (12ct/8 fl oz) from a Target store in Palm Desert, California. In purchasing the Products, Plaintiff saw and relied on Defendant's representations made on the packaging. Specifically, based on the "Milk-based" representation on the Products' front packaging, Plaintiff reasonably believed that the primary ingredient in the Products was milk-based. Plaintiff's reasonable belief that the Products she purchased were milk-based was an important factor in her decision to purchase the Products. Plaintiff would have paid significantly less for the Products, or would not have purchased them at all, had she known that the Products were not milk-based, but that corn syrup solids was the primary ingredient. Therefore, Plaintiff suffered injury in fact and lost money as a result of Defendant's false, unfair, and deceptive practices, as described herein.

12.     Despite being misled by Defendant with respect to the Products she purchased, Plaintiff lacks personal knowledge as to Defendant's specific business practices. Consequently, there is still doubt in her mind as to the possibility that some of the Products are milk-based. For example, because there are several of Defendant's formulas that are labeled as milk-based, and are actually made primarily with milk-based ingredients, and due to the likelihood that Defendant may yet develop and market additional formula products that misrepresent the formulas as milk-based, Plaintiff may again purchase a falsely-advertised formula product from Defendant under the mistaken impression that the product advertised as milk-based formula will have a milk-based ingredient as the primary ingredient. Moreover, Class members will continue to purchase the Products, reasonably but incorrectly believing that they are made primarily with a milk-based ingredient.

13.     Plaintiff is also susceptible to reoccurring harm in that she would purchase the Products in the future if they were in fact milk-based powders, but

cannot be certain Defendant have corrected their deceptive and false advertising scheme. Indeed, Plaintiff regularly shops at stores where the Products are sold, and she would like to continue purchasing the Products. However, she currently cannot trust that Defendant will label and/or advertise the Products she purchased in the past truthfully and in compliance with applicable laws.

14. Defendant Mead Johnson & Company, LLC is a limited liability company organized and existing under the laws of the state of Delaware, with its headquarters and principal place of business at 225 North Canal Street, 24th Floor, Chicago, IL 60606. Defendant, directly and/or through its agents, is responsible for the formulation, marketing, labeling, packaging, distribution, and sale of the Products.

## **FACTUAL ALLEGATIONS**

### **A.** **The Products At Issue**

15. The "Products" at issue in this case consist of all sizes of the following Enfamil Infant Formula products sold during the relevant class period:

    a. Enfamil NeuroPro Gentlease Infant Formula Tubs;

    b. Enfamil NeuroPro Gentlease Infant Formula Super-Saver Refill Packs;

    c. Enfamil NeuroPro Gentlease Infant Formula Sticks;

    d. Enfamil NeuroPro Gentlease Infant Formula Ready To Use Liquid;

    e. Enfamil Gentlease Infant Formula Cans;

    f. Enfamil Enspire Gentlease Infant Formula Tubs;

    g. Enfamil Enspire Gentlease Infant Formula Super-Saver Refill Packs;

    h. Enfamil NeuroPro Sensitive Infant Formula Tubs;

    i. Enfamil NeuroPro Sensitive Infant Formula Super-Saver Refill Packs;

16. The Products are sold across the United States, including in California, through third party retailers, such as grocery chains and large retail outlets, as well as direct to consumers through Defendant's website (https://www.enfamil.com/products/enfamil-formula-and-nutritional-drink/).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.**     <u>**Defendant Misrepresents The Products' Ingredients**</u>

17.     Defendant prominently represents on the front labeling of each of the Products that they are a "Milk-based Powder."

18.     Representative images of the front of the labeling of the Products are depicted below:



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT



19. Based on the "Milk-based Powder" representation, consumers reasonably believe that the primary ingredient in the Products are milk-based.

20. "Most infant formula" is made from cow's milk and has been modified to "resemble human breast milk composition."[2]

21. The lactose found in milk-based infant formulas provides benefits to infants, as "[i]t assists in calcium absorption from baby formula, and it helps feed the good bacteria that are needed to grow in the baby's intestines."[3]

---

[2] Camilia R. Martin, *et al.*, *Review of Infant Feeding: Key Features of Breast Milk and Infant Formula*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4882692/ (last visited February 2, 2022).

22.   When it comes to infant formula, milk-based powders are preferred. "The AAP [American Academy of Pediatrics] recommends that iron-fortified, cow's *milk-based* infant formula is the most appropriate milk feeding from birth to 12 months for infants who are not breastfed or who are partially breastfed."[4]

23.   Despite being advertised as "Milk-based," the primary ingredient in the Products are corn syrup solids:

INGREDIENTS: CORN SYRUP SOLIDS, VEGETABLE OIL (PALM OLEIN, COCONUT, SOY, AND HIGH OLEIC SUNFLOWER OILS), PARTIALLY HYDROLYZED NONFAT MILK AND WHEY PROTEIN CONCENTRATE SOLIDS (SOY), WHEY PROTEIN-LIPID CONCENTRATE (MILK)‡, AND LESS THAN 2%: MORTIERELLA ALPINA OIL§, SCHIZOCHYTRIUM SP. OIL‖, CALCIUM CARBONATE, SODIUM CITRATE, CALCIUM PHOSPHATE, POTASSIUM CHLORIDE, MAGNESIUM PHOSPHATE, FERROUS SULFATE, ZINC SULFATE, CUPRIC SULFATE, MANGANESE SULFATE, POTASSIUM IODIDE, SODIUM SELENITE, CHOLINE CHLORIDE, INOSITOL, ASCORBIC ACID, NIACINAMIDE, CALCIUM PANTOTHENATE, RIBOFLAVIN, THIAMIN HYDROCHLORIDE, VITAMIN $D_3$, VITAMIN $B_6$ HYDROCHLORIDE, FOLIC ACID, VITAMIN $K_1$, BIOTIN, VITAMIN $B_{12}$, VITAMIN E ACETATE, VITAMIN A PALMITATE, TAURINE, L-CARNITINE.

24.   Corn syrup solids, which Defendant uses as the Products' primary ingredient and carbohydrate source in place of lactose, "are made by removing most of the water from corn syrup. Corn syrup, whether it's solid or liquid or contains

[3] Caplan LS & Katherine Erwin, *Does Sugar In Infant Formula Cause Early Childhood Caries*, Arch Paediatr Dev Pathol, Sept. 27, 2017, https://www.jscimedcentral.com/PaediatricPathology/paediatricpathology-1-1014.pdf. (last visited February 2, 2022).

[4] Usama Roshdy El Safy, *Effect of Breastfeeding Versus Infant Formula on Iron Status of Infants With Beta Thalassemia Major*, International Breastfeeding Journal (April 17, 2017), https://internationalbreastfeedingjournal.biomedcentral.com/articles/10.1186/s13006-017-01113#:~:text=The%20AAP%20recommends%20that%20iron,are%20partially%20breastfed%20%5B11%5D (last visited February 2, 2022) (emphasis added).

added fructose (i.e. high fructose corn syrup), is an added sugar that may contribute to obesity and heart disease."[5]

25.    According to Dr. Lee S. Caplan of the Department of Community Health and Preventative Medicine of Morehouse School of Medicine, "Enfamil's Gentlease [] contain[s] approximately 10g of corn syrup solids per 5 oz.  For a two-month old consuming 28 oz. per day of formula, this is 56 g of corn syrup solids every day, which is more than the amount of corn syrup in 16 oz. of Coco-Cola."[6]

26.    This amount of corn syrup for an infant is highly concerning, particularly considering that "[a]lmost 40% of a baby's carbohydrate calories come from baby formula (just like breast milk)." [7]

27.    For these reasons, Dr. Kaplan recommends that "corn syrups should be banned in babies' formula as sweetener." [8]

28.    This ban has already been implemented through most of Europe, as "the EU bans certain added sugars, like corn syrup, from traditional milk-based formulas, and it requires that at least 30% of the carbohydrates come from lactose, the energy-giving carbohydrate in human milk."[9]

29.    It is not surprising that Anthony Porto, a pediatric gastroenterologist and pediatrics professor at Yale University, and Bridget Young, PhD, a professor of

---

[5] Clean Food Facts, https://wellness.consumerfreedom.com/ingredient/corn-syrup-solids/ (last visited February 2, 2022).

[6] Caplan LS & Katherine Erwin, *Does Sugar In Infant Formula Cause Early Childhood Caries*, Arch Paediatr Dev Pathol, Sept. 27, 2017, https://www.jscimedcentral.com/PaediatricPathology/paediatricpathology-1-1014.pdf.

[7] *Id.*

[8] *Id.*

[9] Christina Szalinski, *Why US Parents Are Choosing European Baby Formula*, N.Y. Times, Mar. 12, 2021, https://www.nytimes.com/wirecutter/blog/us-parents-european-baby-formula/(last visited February 2, 2022).

pediatrics at the University of Rochester School of Medicine and Dentistry, "agreed that a formula with lactose as the main sugar is preferable for most babies."[10]

30.    For these reasons, consumers are being deceived into believing they are receiving a milk-based, healthier formula for their infant when, in reality, they are feeding their baby a product where the primary ingredient is unhealthy corn syrup.

## C.    **The False And Deceptive "Milk-based" Representations Harm Consumers**

31.    Plaintiff and other consumers purchased the Products, reasonably relying on Defendant's "Milk-based" representations on the Products' front label.

32.    Plaintiff and other consumers reasonably expect that, based on the labeling of the Products, the primary ingredient in the Products would be milk-based, when in fact, the primary ingredient in the Product is corn syrup solids.

33.    Plaintiff's and other consumers' reasonable belief that the Products are milk-based was a significant factor in each of their decisions to purchase the Products.

34.    Plaintiff and Class members did not know, and had no reason to know, that the Products' labeling was false and misleading as to the primary ingredient of the Products. At the point of purchase, reasonable consumers are not required to, and do not, turn to the back of the package and read the fine print in the ingredient list to discover this fact.

35.    The false belief created by the Products' labeling is a material factor in influencing consumer purchase decisions because it relates to the type and quality of ingredient being received. To the detriment of consumers, Defendant entices consumers to pay for a product that advertises itself as being milk-based, leading consumers to believe the Products are primarily made with a milk-based ingredient when they are primarily made with unhealthy corn syrup.

_____

[10] *Id.*

-11-

36.    As the entity responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Products, Defendant knew or should have known that each of the Products falsely and deceptively misrepresent the Products as being "Milk-based."

37.    Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on the "Milk-based" representations found on the Products' front packaging. Nonetheless, Defendant deceptively advertises the Products as such in order to deceive consumers into believing they are getting more premium formula than they are paying for.

38.    There is a strong financial incentive for Defendant to use corn syrup solids in place of lactose in some of its infant formulas. This is because "corn syrup solids […] are commonly used because they are much cheaper and much sweeter than lactose."[11]

39.    Consumers are willing to pay more for the Products based on the belief that the Products are milk-based powders. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that they were getting Products where the primary ingredient was corn syrup solids.

40.    Each Class member has been exposed to the same or substantially similar deceptive practice, as the Products each deceive consumers about the primary type of ingredient in the Products.  Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

41.    As a result of its misleading business practice, and the harm caused to Plaintiff and other consumers, Defendant should be required to pay for all damages

---

[11] Caplan LS & Katherine Erwin, *Does Sugar In Infant Formula Cause Early Childhood Caries*, Arch Paediatr Dev Pathol, Sept. 27, 2017, https://www.jscimedcentral.com/PaediatricPathology/paediatricpathology-1-1014.pdf.

1  caused to consumers, including Plaintiff. Furthermore, Defendant should be

2  enjoined from engaging in these deceptive practices.

3  **CLASS ACTION ALLEGATIONS**

4      42.    Plaintiff brings this class action pursuant to Fed. R. Civ. P 23 and all

5  other applicable laws and rules, individually, and on behalf of all members of the

6  following Classes:

7  **California Class**

8  All persons who purchased any of the Products in the state of California

9  within the applicable statute of limitations period.

10  **California Consumer Subclass**

11

12  All persons who purchased any of the Products in the state of California, for
    personal, family, or household purposes, within the applicable statute of
    limitations period.

13

14      43.    Excluded from the Classes are the following individuals and/or entities:

15  Defendant and its parents, subsidiaries, affiliates, officers and directors, current or

16  former employees, and any entity in which Defendant has a controlling interest; all

17  individuals who make a timely election to be excluded from this proceeding using

18  the correct protocol for opting out; and all judges assigned to hear any aspect of this

19  litigation, as well as their immediate family members.

20      44.    Plaintiff reserves the right to modify or amend the definition of the

21  proposed Classes and/or add subclasses before the Court determines whether

22  certification is appropriate.

23      45.    Numerosity: The proposed Classes are so numerous that joinder of all

24  members would be impractical. The Products are sold throughout the State of

25  California and the United States, by third-party retailers and directly from Defendant

26  to consumers. The number of individuals who purchased the Products during the

27  relevant time period is at least in the thousands. Accordingly, Class members are so

28  numerous that their individual joinder herein is impractical. While the precise

number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

46.     <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a.  Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

b.  Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

c.  Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

d.  Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

e.  Whether Plaintiff and the Classes are entitled to damages and/or restitution, and in what amount;

f.  Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g.  Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

47.     Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from

-14-

a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the same "Milk-based powder" representation, and (b) are not "Milk-based powder," given that the primary ingredient in the Products is corn syrup. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

48.    Superiority: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

49.    Typicality: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

50.    Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in class action litigation. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

51.    Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

-15-

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750,** *et seq.*
(***for the California Consumer Subclass***)

52.    Plaintiff repeats the allegations contained in paragraphs 1-51 above as if fully set forth herein.

53.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

54.    The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c), and the purchases of such Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

55.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By marketing the Products with their current packaging, Defendant has represented and continue to represent that the Products have characteristics (i.e., are Milk-based powders) that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

56.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current packaging, Defendant has represented and continue to represent that the Products are of a particular standard (i.e., are Milk-based powders) when they are not. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

57.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Products as Milk-based

-16-

powders, but not intending to sell the Products as such, Defendant has violated section 1770(a)(9) of the CLRA.

58.    At all relevant times, Defendant has known or reasonably should have known that the Products were not milk-based powders, in that the primary ingredient is corn syrup, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on the packaging in purchasing the Products.

59.    Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

60.    Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products were not milk-based, but that the primary ingredient in the Products are corn syrup solids.

61.    On October 7, 2021, Plaintiff, by and through her counsel, sent a notice letter by certified mail to Defendant of their intent to pursue claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. Defendant received this notice and demand letter on October 12, 2021.

62.    Because Defendant has failed to fully rectify or remedy the damages caused after waiting more than the statutorily required 30 days after they received the foregoing notice and demand letters, Plaintiff is timely filing this Complaint for damages as permitted under Cal. Civ. Code § 1782(d).

63.    Plaintiff requests that this Court enjoin Defendant from continuing to violate the CLRA as discussed herein and/or from violating the CLRA in the future and to order restitution to Plaintiff and the Class. Plaintiff also requests an award of

actual and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper, pursuant to California Civil Code § 1780(a).

64.   Attached hereto as **Exhibit A** is a declaration of venue pursuant to Cal. Civ. Code 1780(d).

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500, et seq**
(**for the California Class**)

65.   Plaintiff repeats the allegations contained in paragraphs 1-51 above as if fully set forth herein.

66.   Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

67.   The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

68.   Defendant has represented and continue to represent to the public, including Plaintiff and members of the California Class, through its deceptive packaging, that the Products are Milk-based powders, deceiving consumers into believing that the primary ingredient in the Products are milk-based when they are not. Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated the FAL.

69.   As a result of Defendant's false advertising, Defendant has and

-18-

continue to unlawfully obtain money from Plaintiff and members of the California Class.

70.    Plaintiff requests that this Court cause Defendant to restore this fraudulently obtained money to herself and members of the California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the California Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200, *et seq.***
**(*for the California Class*)**

71.    Plaintiff repeats the allegations contained in paragraphs 1-51 above as if fully set forth herein.

72.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant.

73.    The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

74.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and members of the California Class.

75.    Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing

such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers as to the primary ingredient in the Products is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and will continue to unfairly obtain money from Plaintiff and members of the California Class.

76.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are Milk-based powders, but they are primarily made from corn syrup solids. Because Defendant misled Plaintiff and members of the California Class, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and will continue to fraudulently obtain money from Plaintiff and members of the California Class.

77.     Plaintiff requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to herself and members of the California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the California Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### FOURTH CLAIM FOR RELIEF
**Breach of Express Warranty**
**(*for the California Class*)**

78.     Plaintiff repeats the allegations contained in paragraphs 1-51 above as if fully set forth herein.

79.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class.

80.     California's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

81.     Defendant has expressly warranted on the Products' packaging that the Products are "Milk-based powders." However, as alleged herein, this express representation is patently false, as the primary ingredient in the Products is made from corn syrup, not milk-based ingredients.

82.      These representations about the Products: (a) are affirmations of fact or promises made by Defendant to consumers that the Products are Milk-based powders, and therefore, have a milk-based ingredient as the primary ingredient; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product description.

83.     Plaintiff and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

84.     Defendant has breached the express warranties made to Plaintiff and

-21-

members of the California Class by failing to manufacture the Products as Milk-based powders, instead making the primary ingredient in the Products from corn syrup.

85.     Plaintiff and members of the California Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the California Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with the Products.

86.     As a result, Plaintiff and members of the California Class suffered injury and deserve to recover all damages afforded under the law.

87.     Within a reasonable amount of time after Plaintiff discovered that Defendant did in fact breach the express warranty, Plaintiff notified Defendant of the breach through a notice and demand letter which was sent via certified mail on October 7, 2021 and was received by Defendant on October 12, 2021.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
(***for the California Class***)

88.     Plaintiff repeats the allegations contained in paragraphs 1-51 above as if fully set forth herein.

89.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant.

90.     California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Cal. Com. Code § 2314(1).

91.     California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the

promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

92.     Defendant is a merchant with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

93.     By advertising the Products with their current packaging, Defendant made an implied promise that the Products are "Milk-based powders" and therefore, the primary ingredient in the Products is milk-based. The Products have not "conformed to the promises…made on the container or label" because the primary ingredient in the Products is corn syrup solids. Plaintiff and California Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

94.     Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

95.     If Plaintiff and members of the California Class had known that the Products were not Milk-based powders as represented, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

## SIXTH CLAIM FOR RELIEF
### Intentional Misrepresentation
### (*for the California Class*)

96.     Plaintiff repeat the allegations contained in paragraphs 1-51 above as if fully set forth herein.

97.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class.

98.     Defendant marketed the Products in a manner indicating that they are

Milk-based powders, and therefore have a milk-based ingredient as the primary ingredient in the Products. However, the primary ingredient in the Products is corn syrup solids. Therefore, Defendant has made misrepresentations about the Products.

99.     Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the composition and ingredients of the Products. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

100.   At all relevant times when such misrepresentations were made, Defendant knew that the representations were misleading, or has acted recklessly in making the representations, without regard to the truth.

101.   Defendant intends that Plaintiff and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendant.

102.   Plaintiff and members of the California Class have reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

103.   Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and members of the California Class have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### Negligent Misrepresentation
### (*for the California Class*)

104.   Plaintiff repeats the allegations contained in paragraphs 1-51 above as if fully set forth herein.

105.   Plaintiff brings this claim individually and on behalf of the members of

the proposed California Class.

106.   Defendant marketed the Products in a manner indicating that they are Milk-based powders, and therefore the primary ingredient in the Product is milk-based. However, the primary ingredient in the Products is made from corn syrup. Therefore, Defendant has made misrepresentations about the Products.

107.   Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the composition and ingredients of the Products. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

108.   At all relevant times when such misrepresentations were made, Defendant knew or had been negligent in not knowing that that the Products were not milk-based powders, and were not primarily made with a milk-based ingredient. Defendant had no reasonable grounds for believing its misrepresentations were not false and misleading.

109.   Defendant intends that Plaintiff and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendant.

110.   Plaintiff and members of the California Class have reasonably and justifiably relied on Defendant's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

111.   Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and members of the California Class have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## **EIGHTH CLAIM FOR RELIEF**
### **Quasi Contract/Unjust Enrichment/Restitution**
### (*for the California Class*)

112.   Plaintiff repeats the allegations contained in paragraphs 1-51 above as if fully set forth herein.

113.   Plaintiff brings this claim individually and on behalf of the members of the proposed California Class.

114.   As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the California Class to induce them to purchase the Products. Plaintiff and members of the California Class have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendant. Plaintiff and members of the California Class therefore have been induced by Defendant's misleading and deceptive representations about the Products, and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

115.   Plaintiff and members of the California Class have conferred a benefit upon Defendant as Defendant has retained monies paid to it by Plaintiff and members of the California Class.

116.   The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the California Class – i.e., Plaintiff and members of the California Class did not receive the full value of the benefit conferred upon Defendant.

117.   Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon it without paying Plaintiff and the members of the California Class back for the difference of the full value of the benefits compared to the value actually received.

118.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the California Class are entitled to restitution,

1   disgorgement, and/or the imposition of a constructive trust upon all profits, benefits,
2   and other compensation obtained by Defendant from its deceptive, misleading, and
3   unlawful conduct as alleged herein.

4                                **PRAYER FOR RELIEF**

5       **WHEREFORE**, Plaintiff, individually and on behalf of the Classes,
6   respectfully pray for following relief:

7       A.    Certification of this case as a class action on behalf of the Classes
8   defined above, appointment of Plaintiff as Class representative, and appointment of
9   their counsel as Class counsel;

10      B.    A declaration that Defendant's actions, as described herein, violate the
11  claims described herein;

12      C.    An award of injunctive and other equitable relief as is necessary to
13  protect the interests of Plaintiff and the Classes, including, *inter alia*, an order
14  prohibiting Defendant from engaging in the unlawful act described above;

15      D.    An award to Plaintiff and the proposed Classes of restitution and/or
16  other equitable relief, including, without limitation, restitutionary disgorgement of
17  all profits and unjust enrichment that Defendant obtained from Plaintiff and the
18  proposed Classes as a result of its unlawful, unfair and fraudulent business practices
19  described herein;

20      E.    An award of all economic, monetary, actual, consequential,
21  compensatory, and treble damages caused by Defendant's conduct;

22      F.    An award of punitive damages;

23      G.    An award to Plaintiff and her counsel of their reasonable expenses and
24  attorneys' fees;

25      H.    An award to Plaintiff and the proposed Classes of pre- and post-
26  judgment interest, to the extent allowable; and

27      I.    For such further relief that the Court may deem just and proper.

28

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the Classes, hereby demand a jury trial with respect to all issues triable of right by jury.

DATED:  February 2, 2022          **FARUQI AND FARUQI, LLP**

By: _/s/ Benjamin Heikali_
        Benjamin Heikali
        Joshua Nassir
        Ruhandy Glezakos

        _Attorneys for Plaintiff and the Putative Classes_