1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CECILIA MARTINEZ, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MEAD JOHNSON & COMPANY, LLC, <br><br> Defendant. | Case No. 5:22-cv-00213-JWH-SHK <br><br> **ORDER ON DEFENDANT'S MOTION TO DISMISS [ECF No. 16]** |

This case can be distilled to a simple question:  would a reasonable person believe it to be deceptive or misleading for a manufacturer of powdered baby formula to call its products "milk-based" when milk is *one* of the ingredients, but not the ***primary*** ingredient by weight?[1]  Plaintiff Cecilia Martinez believes that the answer to that question is "yes."  Upon that basis, she alleges that Defendant Mead Johnson & Company, LLC engaged in misleading advertising with regard to the marketing and sale of its Enfamil-brand powdered infant formula products.[2]

Before the Court is Mead Johnson's motion to dismiss Martinez's complaint for failure to state a claim and for lack of subject matter jurisdiction.[3]  The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support and in opposition,[4] the Court orders that the Motion is **GRANTED in part** and **DENIED in part**, as set forth herein.

## I.  BACKGROUND

Martinez purchased some Enfamil-brand products from various retail outlets in September 2021.[5]  At that time, she noticed that the products' respective packaging labels proclaimed that the baby formula was "Milk-based,"

---

[1]    Compl. (the "Complaint") [ECF No. 1] ¶ 2.  Per Food and Drug Administration guidance, ingredients on food labels are to be "listed by common or usual name in descending order of predominance by weight."  21 C.F.R. § 101.4(a)(1).

[2]    Complaint ¶¶ 1 & 15 (listing the specific products).

[3]    Def.'s Mot. to Dismiss Compl. for Failure to State a Claim and Lack of Jurisdiction(the "Motion") [ECF No. 16].

[4]    The Court considered the following papers:  (1)  the Complaint; (2) the Motion (including its attachments); (3) Pl.'s Mem. of Law in Opp'n to the Motion (the "Opposition") [ECF No. 19]; and (4) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 21].

[5]    Complaint ¶ 11.

which she personally understood to mean that milk was the primary ingredient.[6] To her shock and dismay,[7] the primary ingredient on the ingredient label appeared to be corn syrup solids—*i.e.*, a distillate of corn syrup with a high concentration of fructose.[8]

Martinez quotes several academics and pediatric experts, who express concern about the use of corn syrup in baby formula.[9]  Thus, Martinez concludes, "consumers are being deceived into believing they are receiving a milk-based, healthier formula for their infant when, in reality, they are feeding their baby a product where the primary ingredient is unhealthy corn syrup."[10]

In February 2022 Martinez filed her Complaint on behalf of herself and two putative classes:  (1) a California Class, defined as "[a]ll persons who purchased any of the Products in the state of California within the applicable statute of limitations period" (the "Class"); and (2) a California Consumer Subclass, defined as "[a]ll persons who purchased any of the Products in the state of California, for personal, family, or household purposes, within the applicable statute of limitations period" (the "Subclass").[11]

Martinez asserts the following eight claims for relief:

- a claim  arising under California's Consumers Legal Remedies Act (the "CLRA"), *see* Cal. Civ. Code §§ 1750, *et seq.*;

---

[6]    *Id.*; *see also id.* at ¶ 18 (showing screenshots of various Enfamil-brand formula products all displaying the text "Milk-based Powder").

[7]    *See* Opposition 1:7-9 (describing Martinez's reaction).

[8]    Complaint ¶ 23.

[9]    *See, e.g., id.* at ¶¶ 25-29 (quoting Dr. Lee S. Caplan of the Department of Community Health and Preventative Medicine of Morehouse School of Medicine; Anthony Porto, a pediatric gastroenterologist and pediatrics professor at Yale University; and Bridget Young, Ph.D., a professor of pediatrics at the University of Rochester School of Medicine and Dentistry).

[10]    *Id.* at ¶ 30.

[11]    *Id.* at ¶ 42.

- a claim arising under California's False Advertising Law (the "FAL"), *see* Cal. Bus. & Prof. Code §§ 17500, *et seq.*;
- a claim arising under California's Unfair Competition Law (the "UCL"), *see* Cal. Bus. & Prof. Code §§ 17200, *et seq.*;
- breach of express warranty;
- breach of implied warranty;
- intentional misrepresentation;
- negligent misrepresentation; and
- unjust enrichment.[12]

Martinez asserts her first claim for relief on behalf of the Subclass and the rest of her claims on behalf of the Class. Mead Johnson moved to dismiss,[13] and the matter is fully briefed.[14]

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a

---

[12]   *Id.* at ¶¶ 52-118.
[13]   *See generally* Motion.
[14]   *See generally* Opposition; Reply.

-4-

1    motion for summary judgment." *Id*.  The Court "need not presume the

2    truthfulness of the plaintiff's allegations" in deciding a factual attack.  *Id*.

3         Both preemption and standing issues are matters implicating subject

4    matter jurisdiction.  *See McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005,

5    1009 (9th Cir. 2018) ("Preemption is a matter of subject matter

6    jurisdiction . . ."); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir.

7    2011) (noting that Article III standing bears on the court's subject matter

8    jurisdiction and is therefore subject to challenge under Rule 12(b)(1)).

9    **B.    Rule 12(b)(6)**

10        A claim should be dismissed under Rule 12(b)(6) where the plaintiff fails

11   to assert a "cognizable legal theory" or the complaint contains "[in]sufficient

12   facts . . . to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729,

13   732 (9th Cir. 2001).  To survive a motion to dismiss, the complaint must allege

14   "more than labels and conclusions, and a formulaic recitation of the elements of

15   a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The

16   claim must be pleaded with "sufficient factual matter, accepted as true, to state

17   a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678

18   (2009), and that rises "above the speculative level," *Twombly*, 550 U.S. at 555.

19   "A claim has facial plausibility when the plaintiff pleads factual content that

20   allows the court to draw the reasonable inference that the defendant is liable for

21   the misconduct alleged." *Iqbal*, 556 U.S. at 678.

22        Normally, Rule 12(b)(6) must be read in conjunction with Rule 8(a),

23   which requires a "short and plain statement of the claim showing that a pleader

24   is entitled to relief," in order to give the defendant "fair notice of what the claim

25   is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also*

26   *Horosny v. Burlington Coat Factory, Inc.*, 2015 WL 12532178, at *3 (C.D. Cal.

27   Oct. 26, 2015).  Claims alleging fraud, however, are subject to a heightened

28   pleading standard.  *See* Fed. R. Civ. P. 9(b).  Rule 9(b) requires that

circumstances constituting a claim for fraud or mistake must be pleaded with particularity. *Id.* That rule requires a plaintiff to "identify the who, what, when, where and how of the misconduct charged" as well as "what is false or misleading about a statement, and why it is false." *Ebeid* ex rel. *United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Additionally, it is well settled in the Ninth Circuit that the Federal Rules of Civil Procedure, including Rule 9(b), apply in federal court, "irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

## III. DISCUSSION

### A. Request for Judicial Notice

As a preliminary matter, Mead Johnson requests judicial notice of a bevy of exhibits. Those exhibits fall into five categories:

- Mead Johnson product labels (Exhibits 1 and 2);
- FDA materials (Exhibit 3);
- dictionary definitions (Exhibits 4 and 5);
- publicly available information from myriad sources (Exhibits 6 through 10); and
- competitor product labels (Exhibit 11).[15]

"The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(c). For instance, "court filings and other matters of public record" are sources whose accuracy cannot reasonably be questioned for the purposes of Rule 201. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). "The

---

[15]    *See generally* Req. for Judicial Notice in Supp. of the Motion (the "Request for Judicial Notice") [ECF No. 17].

court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

### 1.   Mead Johnson Product Labels

Exhibits 1 and 2 appear to be proofs of Mead Johnson's product labels, one for each of the products that the Complaint mentions (at least once) by name.[16] The Court trusts that the labels in the Exhibits are indeed what Mead Johnson says they are. But mere trust does not satisfy the standard for judicial notice. Packaging labels are not court documents. Labels can and do change from time to time, so the Court cannot conclude that the renditions that Mead Johnson provides are unquestionably accurate representations of the labels that appeared on shelves across California during the relevant period. *See, e.g.*, *Bruton v. Gerber Prod. Co.*, 2014 WL 172111, at *5 (N.D. Cal. Jan. 15, 2014) (denying request for judicial notice where defendant did not "provide any information that would authenticate the images . . . or confirm that products with these labels were actually sold during the class period"). Moreover, in an era in which technological advances make it easy to adjust or professionally touch up visual proofs, photographs, and even screenshots, the Court must proceed with caution before taking judicial notice of evidence that would otherwise require some foundation. *See, e.g.*, *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 893 (N.D. Cal. 2012) (declining to take judicial notice of product labels when the Court was offered only "proofs, not photographs of the labels or the products themselves").

Mead Johnson suggests that Exhibits 1 and 2 can also be admitted under the doctrine of incorporation-by-reference. The Court is not convinced. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the

---

[16]   *Compare* Complaint ¶ 15 *with* Request for Judicial Notice 1:7-20.

-7-

document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  While Martinez does mention each product in her Complaint, she does so only once by name.  It cannot be said that Martinez refers ***extensively*** to any single label, so much as she repeatedly references a phrase common to all of them.[17]  Shallow references to a dozen product labels, each of which could sustain Martinez's claims, do not trigger the incorporation-by-reference doctrine.  *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("mere mention of the existence of a document is insufficient to incorporate the contents of a document").  Furthermore, nothing about Martinez's pleading appears to undermine the policy reasons behind the incorporation-by-reference doctrine—*i.e.*, "to prevent artful pleading by plaintiffs"—when Martinez does not dispute the accuracy of the ingredient list or other aspects of the product labels.[18]  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

Since neither party asks the Court to convert the motion to dismiss into a motion for summary judgment, the Court finds it most appropriate to refrain from considering documents or exhibits as evidence that might trigger such a transformation.  Therefore, the Request for Judicial Notice regarding Exhibits 1 and 2 is **DENIED**.

### 2.    FDA Guidance

In contrast, Mead Johnson's Request for Judicial Notice as it relates to FDA guidance concerning labels for infant formula ***is*** a judicially noticeable document, as it is publicly available and it was disseminated by a government agency.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir.

---

[17]    *See* Complaint ¶¶ 2-6, 11-13, 17, 19, 21-23, 28, 30, 31, 33, 35-37, 39, 47, 55-58, 60, 68, 76, 81, 82, 93, 95, 98, 106, & 108 (noting all instances regarding the phrase "Milk-based").

[18]    *See, e.g.*, *id.* at ¶ 23 (including an ingredient list in her allegations without questioning its accuracy).

2010); *see also Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1116 (C.D. Cal. 2010) (taking judicial notice of FDA guidance regarding the labeling of trans fats).  The Request for Judicial Notice is **GRANTED** as it relates to Exhibit 3.

### 3. Dictionary Definitions

In Exhibits 4 and 5, Mead Johnson offers screenshots of definitions of the word "based" from online dictionaries.[19]  Having verified the web addresses provided, the Court **GRANTS** the Request for Judicial Notice as it relates to those definitions.  *See Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 803 (9th Cir. 1989) (taking judicial notice of a dictionary definition of the word "fraction").

### 4. Publicly Available Information

Exhibits 6 through 10 contain information from a smattering of websites, including those belonging to the American Academy of Pediatrics, the Centers for Disease Control, and Enfamil.[20]  Mead Johnson urges the Court to take notice of those websites to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."[21]  But the Court is uncomfortable doing even that.

"Although websites can be noticed for the mere fact of their publication and not for the truth of a matter, courts are hesitant to take notice of these sources when the facts within them are disputed, when their accuracy has not been established, or when a request for notice of a website is objected to." *Vampire Fam. Brands, LLC v. MPL Brands, Inc.*, 2021 WL 4134841, at *2

---

[19]    Request for Judicial Notice 1:25-2:1.

[20]    *Id.* at 2:2-9.

[21]    *Id.* at 5:3-4 (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010)).

1    (C.D. Cal. Aug. 6, 2021) (denying judicial notice for screenshots of third-party

2    websites).

3         Accuracy and verifiability are the Court's main concerns here.  Exhibits 6

4    and 8 returned an error when the Court attempted to access the links.  The

5    website in Exhibit 7 appears to have been updated since the time when Mead

6    Johnson took a screenshot, which undercuts the Court's ability to verify

7    whether that information was truly available to the public during the relevant

8    time period.  And finally, Exhibits 9 and 10 appear superficially similar, but

9    Enfamil.com is a far cry from the well-chronicled websites of major media

10   outlets, like the *New York Times* or *Wall Street Journal*.  The Court could glean

11   no information from the websites themselves to confirm that the information

12   was the same—or that those pages even existed—***at the time*** when Martinez

13   made her purchases (*i.e.*, September 2021).[22]  Therefore, the Request for

14   Judicial Notice for Exhibits 6 through 10 is **DENIED**.

15        **5.    Competitor Product Labels**

16        Lastly, Mead Johnson asks the Court to take judicial notice of roughly a

17   dozen product labels that it claims belong to its competitors.[23]  For the reasons

18   explained above, *see supra* Part III.A.1., product labels are inappropriate for

19   judicial notice.  Similarly, when the Complaint does not even call out a

20   competitor's label by name,[24] incorporation-by-reference is wholly inapt.

21   Therefore, the Request for Judicial Notice is **DENIED** with respect to

22   Exhibit 11.

23

24

25

26   ---
     [22]    Complaint ¶ 11.
     [23]    Request for Judicial Notice 2:10.

27   [24]    *See* Complaint ¶ 5 (alleging only "that many of Defendant's competitor
     products, and other products in Defendant's own product line, ***are*** milk-based
28   when advertised as such") (emphasis original).

**B.    Martinez's CLRA, FAL, and UCL Claims**

Martinez's first three claims for relief arise under the CLRA, FAL, and UCL, respectively.[25]  Each is "governed by the 'reasonable consumer test.'" *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  "Under this standard, [the plaintiff] must show that members of the public are likely to be deceived."  *Id.*  This showing "requires more than a mere possibility that [the defendant's label] 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Id.* (citation omitted).  Rather, there must be a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Id.*

Here, Martinez alleges that she reasonably relied on the "Milk-based" label to expect that milk was the primary ingredient by weight in the Enfamil products.[26]  Her interpretation may very well be sincere, but it is only one person's rather narrow interpretation.  Martinez otherwise alleges no factual support for why a reasonable consumer would narrowly interpret a ***something***-based label to mean that ***that something*** must contribute the most to the product's weight, relative to any other ingredient.  *See, e.g.*, *Puri v. Costco Wholesale Corp.*, 2021 WL 6000078, at *6 (N.D. Cal. Dec. 20, 2021) (granting a motion to dismiss where there were "no facts to support the FAC's fundamental theory that to qualify as 'chocolate,' a food must be chiefly made from ingredients derived from cacao beans"); *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229–31 (9th Cir. 2019) (affirming a motion to dismiss even though the plaintiff also alleged that dictionary definitions and survey data supported her interpretation).

---

[25]    Complaint ¶¶ 52-77.

[26]    *Id.* at ¶¶ 31-34.

1    Mead Johnson goes a step further, casting doubt on the plausibility that

2    reasonable consumers would share Martinez's interpretation. Mead Johnson

3    illustrates is point with simple examples. Humans, for instance, are carbon-

4    based lifeforms, even though carbon is not the primary constitutive element in

5    the human body by weight. Similarly, a store-bought can of chicken-based broth

6    would likely share the same primary ingredient as a vegetable-based broth:

7    water.[27]

8    And while "in some contexts, the generic '[item]-based' descriptor

9    implies that the item comprises most if not all of the whole," *see Prescott v. Bayer*

10   *HealthCare LLC*, 2020 WL 4430958, at *8 (N.D. Cal. July 31, 2020), contexts

11   do vary, and they do matter, *see, e.g.*, *Videtto v. Kellogg USA*, 2009 WL 1439086,

12   at *3 (E.D. Cal. May 21, 2009) (finding that no reasonable consumer could be

13   deceived to think that "Froot Loops" cereal contained real fruit); *see also Moore*

14   *v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (underscoring the "general

15   principle that deceptive advertising claims should take into account all the

16   information available to consumers and the context in which that information is

17   provided") (internal citation omitted).

18   Of course, the nutrition labels on the back of the Enfamil-brand products

19   are key elements of the contextual mosaic here. Consumers could easily turn the

20   bottle around to read the ingredient label, whereupon they would see that milk *is*

21   an ingredient, even though it is not the first ingredient listed.[28] And while

22   reasonable consumers are not "expected to look beyond misleading

23   representations on the front of the box," *Williams*, 552 F.3d at 939, Martinez has

24   not done enough to allege that calling a product "Milk-based" is, in fact,

25   deceptive when milk is patently one of the named ingredients. Indeed, FDA

26

27   ―――――――――――――――
     [27]    *See* Motion 11:21-12:6.

28   [28]    *See* Complaint ¶ 23; *see also* Motion 12:25-13:7.

guidance suggests that labels should identify or describe "the basic nature of the food or its **characterizing** properties or ingredients."  Labeling of Infant Formula:  Guidance for Industry, U.S. FOOD AND DRUG ADMIN. (Sep. 2016), https://www.fda.gov/media/99701/download (emphasis added) (the "FDA Guidance").  The FDA then illustrates that point by using "milk-based" or "soy-based" as examples of proper labels that identify characterizing ingredients.  *Id*.  Importantly, the FDA Guidance says nothing to the effect that a product's characterizing ingredient should be conflated with the product's primary ingredient by weight.[29]  *Id*.

Against that backdrop, Martinez would need to allege, plausibly, why the ingredient label fails to provide reasonable consumers with enough context clues to clarify any unlikely ambiguity surrounding the phrase "Milk-based."  *See Moore*, 4 F.4th at 882 (holding that "other available information about Trader Joe's Manuka Honey would quickly dissuade a reasonable consumer from the belief that Trader Joe's Manuka Honey was derived from 100% Manuka flower nectar").

At most, Martinez counters with some arguments and examples why consumers might reasonably misinterpret the "Milk-based" label on Enfamil products.[30]  But even if the Court accepted those arguments as true, they point only to plausible **misunderstandings**.  Such allegations are insufficient to satisfy the reasonable consumer test.  *See Becerra*, 945 F.3d at 1229.

---

[29]     To be fair, the FDA Guidance also says nothing to link explicitly the characterizing ingredient to the protein source, as Mead Johnson would have it. *See* Opposition 18:1-3.

[30]     *See, e.g.*, Opposition 5:20-6:2 (implying that consumers might be confused by the way that competitors label their products, such as Similac Alimentum) & 6:11-21 (asserting that the use of corn syrups is not common knowledge); *but see* Reply 10:4-11:4 (objecting to Martinez's characterization on a factual basis, as well as noting that those examples are not alleged in the Complaint).

1    Therefore, the Court concludes that Martinez has failed a state a claim.

2    Accordingly, the Court **GRANTS** the Motion and **DISMISSES** Martinez's

3    CLRA, FAL, and UCL claims **with leave to amend**.  The Court affords leave to

4    amend, in part because Martinez has not yet amended her pleading and in part

5    because it may not be entirely impossible for Martinez to allege sufficient facts to

6    overcome the infirmities discussed here.  *See Nunes v. Ashcroft*, 375 F.3d 805,

7    808 (9th Cir. 2004) (discussing factors to consider when granting leave to

8    amend, including the consideration of futility).

9    **C.    Breach of Express and Implied Warranties**

10   Martinez's fourth claim for relief alleges that Mead Johnson's products

11   breached California's express warranty statute,[31] which requires that "[a]ny

12   affirmation of fact or promise made by the seller to the buyer which relates to the

13   goods and becomes part of the basis of the bargain creates an express warranty

14   that the goods shall conform to the affirmation or promise."  Cal. Com. Code

15   § 2313(1)(a).  Similarly, in her fifth claim for relief Martinez pleads that the

16   Enfamil products breach California's implied warranty statute,[32] which requires

17   merchantable goods to "[c]onform to the promises or affirmations of fact made

18   on the container or label if any."  Cal. Com. Code § 2314(2)(f).  Both claims rest

19   on the idea that a "Milk-based" product means that milk must constitute the

20   primary ingredient by weight.  However, as already discussed, Martinez has not

21   alleged sufficient facts to make that interpretation plausible, *see supra* Part III.B.

22   The parties do not offer additional reasons why these claims stand or fall

23   independently,[33] so, in view of the Court's previous findings, the Motion is

24   **GRANTED** and Martinez's fourth and fifth claims are **DISMISSED with**

25   **leave to amend**.

26   ───────────────────

27   [31]    Complaint ¶¶ 78-87.

[32]    *Id*. at ¶¶ 88-95.

28   [33]    *Compare* Motion 23:1-13 *with* Opposition 21:14-23.

-14-

**D.     Intentional and Negligent Misrepresentation**

Martinez's sixth and seventh claims for relief seek remedies for alleged acts of intentional and negligent misrepresentation, respectively.[34]  Both claims require a plaintiff to show, *inter alia*, that the defendant represented something to be true when it was not.  *See Manderville v. PCG&S Grp., Inc.*, 146 Cal. App. 4th 1486, 1498 (2007); *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986).

Neither party affords much attention to these claims.[35]  Because Martinez does not dispute the fact that Enfamil products ***do*** contain milk,[36] her only pathway to preserve these claims is narrow.  Martinez must allege sufficient facts showing that a reasonable consumer would expect a formula product labeled as "Milk-based" to have milk be the leading ingredient by weight.  Since Martinez has yet to accomplish that task, *see supra* Part III.B., the Motion is **GRANTED**, and Martinez's sixth and seventh claims for relief are **DISMISSED with leave to amend**.

**E.     Unjust Enrichment and Restitution**

Mead Johnson contends that unjust enrichment and restitution is a remedy rather than a claim for relief.[37]  *See McKinnis v. Kellogg USA*, 2007 WL 4766060, at *6 (C.D. Cal. Sept. 19, 2007) (explaining that "[t]here is no cause of action for unjust enrichment in California; rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust).  Martinez does not disagree, clarifying that she intended to plead it as a remedy.[38]

---

[34]     Complaint ¶¶ 96-111.

[35]     *Compare* Motion 23:1-13 *with* Opposition 21:14-23.

[36]     Reply 2:13-15.

[37]     Motion 23:13-23.

[38]     Opposition 21:24-22:4.

The parties appear to agree on substance here, but perhaps not on form. The Court need not wade into that semantic dispute. Accordingly, the Motion is **DENIED** with respect to Martinez's eighth claim for relief. The Court expects that Martinez will address this claim/remedy issue when she amends her pleading.

**F.    Preemption**

Mead Johnson also argues that Martinez's claims should be dismissed with prejudice as preempted by federal law. It contends that Martinez's theories—which arise under California state law—contravene federal FDA regulations.[39]

Mead Johnson's argument is flawed. Specifically, Mead Johnson says that the theories that Martinez advances would run afoul of the FDA's finalized rule that a product label should use the common name for a food, which must identify or describe the basic nature of the food or its characterizing properties or ingredients.[40] *See* 21 C.F.R. § 102.5(a). However, that rule does not then define what counts as the common name or what counts as a characterizing property: is it the most predominant ingredient, the source of protein, or something else context-specific? As such, Mead Johnson turns to the judicially noticed, non-binding FDA Guidance.[41] But that guidance itself is indeterminate. It does not explicitly equate the product's characterizing ingredient with the ingredient that contributes the most weight ***or*** the most protein. *See generally* FDA Guidance. Without further explication, it appears—at least preliminarily—that the FDA Guidance neither condemns nor commends either party's preferred interpretation of what the label should say.[42] That wiggle

---

[39]    Motion 19:21-21:23.

[40]    *Id.* at 20:24-21:9.

[41]    *Id.* at 20:18-21.

[42]    Mead Johnson insists that "Milk-based" is the proper label, since it describes the protein source, whereas Martinez appears to prefer a label that

room cautions the Court against finding any express or implied preemption, at least on this record and at this procedural juncture.

But even if the FDA Guidance had put a firm stake in the ground, courts generally find that non-binding guidance does not create a preemptive effect.[43] *See, e.g.*, *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1034 (N.D. Cal. 2009) (holding that the FDA's decision to eschew a binding rule for the term "natural" is "consistent with an intent not to occupy the field"); *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 342 (3d Cir. 2009) (same for an FDA policy statement); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *10 (E.D.N.Y. Aug. 29, 2013) (denying a request to give preemptive effect to the FDA's non-binding guidance on the term "natural"); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 285 (S.D.N.Y. 2014) (same for the FDA's Compliance Policy Guide). Therefore, even if Mead Johnson's interpretation of the FDA Guidance is correct—*i.e.*, that a "something-based" product label for powdered infant formula should refer to the protein source—the advisory nature of the guidance renders it inert from the standpoint of the preemption doctrine.

## G.    Standing

Mead Johnson also argues that Martinez lacks standing for injunctive relief because she is now aware that the "Milk-based" label does not mean that milk is the primary ingredient in the Enfamil products at issue.[44] The Court agrees—at least narrowly with respect to Martinez, but not necessarily with respect to putative class members.

"A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967

---

calls out the primary ingredient, *i.e.*, corn syrup. *Compare* Opposition 19:4-12 *with* Reply 10:12-11:4.

[43]    Opposition 18:15-19:2.

[44]    Motion 21:24-22:27.

1    (9th Cir. 2018).  For injunctive relief, which is a prospective remedy, the threat

2    of injury must be "actual and imminent, not conjectural or hypothetical."

3    *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

4         Previously deceived consumers may retain standing for injunctive relief,

5    even after they are made aware of the deception, because "[k]nowledge that the

6    advertisement or label was false in the past does not equate to knowledge that it

7    will remain false in the future."  *Davidson*, 889 F.3d at 969.  But unlike those

8    cases where a consumer could not verify whether a manufacturer's ***new***

9    advertisements labels were true or false, *see, e.g.*, *id.* at 971–72, Martinez now

10   knows where to look to dispel any confusion about the "Milk-based" label:  the

11   ingredient list.

12        Martinez argues, in essence, that this holding puts too much of a burden

13   on her to remain vigilant, citing *Prescott* as support.  But *Prescott* is inapposite

14   because the facts are readily distinguishable.  There, the plaintiffs alleged that a

15   sunscreen's label was misleading because it described the sunscreen as

16   "mineral-based," even though it was not ***strictly*** mineral-based (rather, the

17   sunscreen also contained active "chemical" ingredients).  *See Prescott*, 2020 WL

18   4430958, at *7.  The Court agrees that a reasonable consumer would not be

19   expected to know whether certain esoteric ingredients were "minerals" or

20   "chemicals," so simply reviewing the ingredient label was no cure when

21   consumers had to rely on the front packaging's representations.

22        In contrast, Martinez requires no advanced degree in chemistry to know

23   that milk is not necessarily the predominant ingredient by weight in Enfamil

24   products, even when the label says that they are "Milk-based."  By design, food

25   product labels and their ingredient lists use the common or usual name of the

26   food.  *See, e.g.*, 21 C.F.R. § 102.5(a)(1); 21 C.F.R. § 101.4(a)(1).  Therefore, since

27   Martinez faces no actual or imminent harm, the Court agrees that she lacks

28

standing for injunctive relief.[45]  *See Stewart v. Kodiak Cakes, LLC*, 537

F. Supp. 3d 1103, 1127 (S.D. Cal. 2021) (finding no standing for injunctive relief

where plaintiffs could "cross-check their previous disappointing purchases" by

examining information on the front label with the nutrition facts label).

That holding, though, applies only to Martinez.  Putative class members,

who have yet to even be notified of this lawsuit, would not necessarily be aware

of the facts alleged in the Complaint that could assist them to avoid any

confusion.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.     Mead Johnson's Request for Judicial Notice is **GRANTED in part**

and **DENIED in part**, as follows:

a.     the Court takes judicial notice of Mead Johnson's Exhibits 3,

4, and 5; and

b.     otherwise, Mead Johnson's Request for Judicial Notice is

**DENIED**.

2.     Mead Johnson's instant Motion is **DENIED** with respect to

Martinez's eighth claim for relief.

3.     Mead Johnson's Motion is **GRANTED without leave to amend**

as it relates to Martinez's ability to pursue injunctive relief solely for herself.

4.     Mead Johnson's Motion is otherwise **GRANTED**, and Martinez's

remaining claims are **DISMISSED with leave to amend**.

5.     Martinez is **DIRECTED** to file an amended pleading, if at all, no

later than November 10, 2022.  If Martinez chooses to file an amended pleading,

then she is also **DIRECTED** to file contemporaneously therewith a Notice of

---

[45]     *See* Complaint at Prayer ¶ C (where Martinez prays for an award of injunctive relief).

Revisions to Complaint that provides the Court with a redline version that shows the amendments.

   6. Mead Johnson is **DIRECTED** to file a response to Martinez's operative pleading no later than December 2, 2022.

   7. The parties are **DIRECTED** to file an updated Joint Rule 26(f) Report no later than December 23, 2022.

   8. The Scheduling Conference is **CONTINUED** to January 6, 2023, at 9:00 a.m. in Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California.

  **IT IS SO ORDERED.**

Dated: October 22, 2022

             John W. Holcomb
             UNITED STATES DISTRICT JUDGE